**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SOMMER SHERIE STEWARD,**

      **Petitioner**

                             **Case No.  2:21-cv-5940**
    **v.**                             **Judge Michael H. Watson**
                                   **Magistrate Judge Elizabeth A. Preston Deavers**

**SHELBIE SMITH, Warden,**
**Dayton Correctional Institution,**

      **Respondent.**

## REPORT AND RECOMMENDATION

*Pro se* Petitioner Sommer Sherie Steward has filed a habeas corpus petition under 28 U.S.C. § 2254 (Petition, ECF No. 1).  The Respondent Warden has filed the State Court Record (ECF No. 9), Transcript (ECF No. 10), and a Return of Writ (ECF No. 11).  Petitioner has not filed a Traverse, and the time for doing so has passed.  S.D. Ohio Civ.R. 7.2(a)(2).  The case is before the undersigned pursuant to 28 U.S.C. § 636(b) and General Order 22-05 regarding assignments and references to Magistrate Judges.  For the reasons set forth below, it is **RECOMMENDED** that the Petition be **DENIED** and this case be **DISMISSED WITH PREJUDICE**.

## I.    Factual Background and Procedural History

The underlying facts are set forth in *State v. Steward*, 2020-Ohio-4553, 159 N.E.3d 356 (10th Dist. 2020):

> {¶ 1} This is an appeal by defendant-appellant, Sommer S. Steward, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following a jury trial finding her guilty of felonious assault and improperly discharging a firearm.

{¶ 2} On August 1, 2017, appellant was indicted on two counts of felonious assault, in violation of R.C. 2903.11, and one count of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161. Each of the counts also carried a firearm specification. A co-defendant, Mi Angel Steward (hereafter "co-defendant" or "Mi A. Steward"), was also charged with two counts of felonious assault and one count of improperly discharging a firearm and additionally charged with one count of having weapons while under disability, in violation of R.C. 2923.13.

{¶ 3} Appellant and her co-defendant were tried jointly before a jury beginning October 16, 2018. The first witness for plaintiff-appellee, State of Ohio, was Andrea Mann, age 33. Mann and Darla Irvin are childhood friends. Mann is also a childhood acquaintance of appellant, and Mann has known the co-defendant since the co-defendant was nine years of age. Mann testified that her relationship with appellant has "been rocky for the last year" due to an "altercation" in which appellant "and Irvin got into a fight and just took it too far." (Tr. Vol. II at 34.) At trial, Mann stated she was "not here to testify against [appellant] at all. I'm not here to testify against Mi Angel." (Tr. Vol. II at 35.) With respect to appellant, Mann further stated: "I'm not against her. We really are childhood friends, and it just went too far and really just got out of control." (Tr. Vol. II at 36.) Mann stated that she and Irvin are "best friends." (Tr. Vol. II at 37.)

{¶ 4} On July 22, 2017, Mann was at Irvin's residence when Irvin placed a 911 call. At trial, the state played a recording of the 911 call. On the recording, Irvin stated to the dispatcher: "Oh, my God. This girl -- me and my friend just pulled up to my house, and we noticed there was a car already sitting outside. And a girl -- we know the girl. She got out and shot at my house. Like shot at me and my house. There's bullet holes in my house. And drove off in a truck." (Tr. Vol. II at 47.)

{¶ 5} Irvin reported that the incident happened "like 5 minutes ago. Not even 5 minutes. Probably 2 minutes ago." (Tr. Vol. II at 47.) Irvin told the dispatcher: "Her name is Sommer Steward. It was two of them. * * * Her niece's name is Mi Angel Steward. Her niece was driving, and she's already wanted for felonious assault." (Tr. Vol. II at 48.) Irvin described the suspect vehicle as a blue truck and provided the dispatcher with the license plate number stating that "[t]he tag was in the window." (Tr. Vol. II at 51.) Irvin told the dispatcher that Mi A. Steward "never got out of the car. She was driving. Only one person got out of the car and started shooting, and that was Sommer." (Tr. Vol. II at 52.)

{¶ 6} During the 911 call, Mann also spoke to the dispatcher, stating: "They threatened to do this. They threatened to come over to my house. They threatened to do all of that." (Tr. Vol. II at 53.) Mann told the dispatcher "we were childhood friends, and we grew up with them." (Tr. Vol. II at 54.) Mann further related "the girl Sommer is mad at my best friend because we've been hanging out with our friend that we grew up with all of them, and she started -- basically, they were

arguing." (Tr. Vol. II at 54.)

{¶ 7} On the date of the incident, Mann signed a photograph identifying Mi A. Steward to the police as the individual driving the vehicle that evening. Mann also signed a photograph identifying appellant to the police as the individual who fired shots into the house. Mann acknowledged she "did talk to the police. I did write a statement. I did sign the statement. I did all of that." Mann testified that she "[w]ent and got high" after the 911 call. (Tr. Vol. II at 56.)

{¶ 8} On cross-examination, Mann testified she did not know who the shooter or driver was that evening, stating: "I just remember [Irvin] saying that it was them. I mean, you know, like it was them." (Tr. Vol. II at 65.) Mann stated: "I can't say that I saw Sommer's face fire a firearm." According to Mann: "I know that they were beefing and they had just got into a fight. And, yes, there was a firearm fired at the house and all of that. But I cannot sit here and say that I saw Sommer Steward's face at all or Mi Angel Steward's face at all." (Tr. Vol. II at 67.) Mann stated she did not observe either appellant or Mi A. Steward participate in the shooting.

{¶ 9} Following cross-examination, and outside the presence of the jury, the state requested the trial court play a recording of a police interview conducted with Mann shortly after the incident to refresh her recollection. The trial court granted the request.

{¶ 10} When the proceedings resumed, Mann stated on redirect examination that she recalled telling the police that "Sommer Steward" was running toward her and the house that evening. Mann testified: "I said she was running with a gun. * * * I said she was shooting it. I just heard it and it refreshed my memory, the recording that you just played." (Tr. Vol. II at 92.) When asked if she recalled telling police who was sitting in the car, Mann responded: "I said Mi Angel was driving the car, in which I know Mi Angel, what she looks like, because I've been knowing her since she was nine. * * * But I just said that on the thing. I did give a description of Sommer, I gave a description of Mi Angel, and of the car." Mann acknowledged she "told those police those things." (Tr. Vol. II at 94.) Mann further testified: "When the shots went off, I don't remember who did them. I don't remember seeing who. I can't say that I seen Sommer, because I didn't. I was scared and I went that way." (Tr. Vol. II at 94.)

{¶ 11} Columbus Police Officer Gary Cooper assisted police detectives in the investigation of the case. At trial, Officer Cooper identified a photo log, including photographs of a Honda CRV; the detectives performed a search of the vehicle pursuant to a search warrant. The vehicle was "bluish-green" in color. (Tr. Vol. II at 102.)

{¶ 12} On July 22, 2017, Officer Cooper assisted in the search of appellant's

residence located on East Whittier Avenue. At trial, he identified photographs taken of the residence. During the search, officers discovered a revolver on a shelf in a bedroom closet; the weapon was wrapped inside a blue t-shirt.

{¶ 13} Brian Johnson, a firearm examiner for the Columbus Police Crime Laboratory, identified state's exhibit No. 11 as a "Rossi brand model M971 .357 magnum revolver." (Tr. Vol. II at 127.) According to Johnson, after the weapon is fired "[t]he shell casings will remain in the cylinder until the shooter swings the cylinder out of the frame of the weapon and manually ejects and extracts the casings." (Tr. Vol. II at 128.) He identified state's exhibit Nos. 12-1 and 12-2 as spent projectiles. Johnson "determined that both of these projectiles were fired from the same weapon." (Tr. Vol. II at 135.) He further "determined that these items could neither be identified nor eliminated as having been fired from this particular firearm." (Tr. Vol. II at 136.)

{¶ 14} On July 22, 2017, Columbus Police Detective Anthony Richardson and another detective responded to a report of a shooting incident at on Alcoy Drive based on a 911 call received at 12:03 a.m. Before leaving police headquarters, Detective Richardson was informed by police officers "it was a known suspect * * * that shot at these two victims." Detective Richardson "pulled up single photos of the two people that they had described." (Tr. Vol. II at 150.)

{¶ 15} Arriving at the scene, Detective Richardson interviewed two individuals who "stated they had been shot at." (Tr. Vol. II at 149.) The detective interviewed Mann and showed her the photographs. Detective Richardson "asked her if she recognized who it was" and Mann "said yes, she did." The detective then "had her write the person's name of who was in the photograph and had her sign it and date it and put the time on the pictures, identifying them as the two people that were involved in this incident." (Tr. Vol. II at 151.) Mann signed the photographs at 1:09 a.m. and 1:10 a.m. on the date of the incident.

{¶ 16} Detective Richardson testified Mann wanted "to get her story out about what happened. She obviously had been riled up a little bit, because someone she knew she stated had just fired some shots at her and her friend." (Tr. Vol. II at 152-53.) Detective Richardson testified that Mann displayed no indication of being intoxicated or under the influence at the time.

{¶ 17} Irvin, age 31, testified she has known appellant and Mi A. Steward for approximately 20 years; Irvin stated they have been friends for that time and continue to be friends, and she did not want to testify. On July 22, 2017, Irvin resided on Alcoy Drive; the house is located on a cul-de-sac. At trial, Irvin identified photographs depicting bullet holes in the residence, including a bullet hole in the kitchen stove.

{¶ 18} On the night of the incident, Irvin was with her best friend, Mann. They

4

arrived at Mann's residence at approximately 10:00 p.m. Irvin noticed "a car that was parked on my street." (Tr. Vol. II at 183.) Irvin heard gunshots. When the shots began, Irvin was "walking up to the front door, opening it." The shots "were coming from like the middle of the street." Irvin heard "two to three" shots. (Tr. Vol. II at 190.)

{¶ 19} Irvin testified: "I was startled. As I turned around, you know, they drove away. I actually didn't see Sommer physically shooting at me. I never physically seen Mi Angel. Like I said, it was dark outside. I really can't see. My friend was the one who described -- pretty much telling me who they was. So at the end of the day, I didn't physically see her shooting." (Tr. Vol. II at 184.) Irvin further testified: "I can't see at all. And like I said, I was under the influence of drugs." (Tr. Vol. II at 191.)

{¶ 20} Irvin stated she and appellant had been in a fistfight a week earlier. According to Irvin, "[w]e had just got into an altercation, so * * * we was texting back and forth. They were saying they were going to come out and do something to me." Irvin stated: "I actually didn't know the license plate number. My friend is the one that had the license plate number. I never knew it." (Tr. Vol. II at 192.)

{¶ 21} Following the shooting, Irvin made a 911 call. Irvin told the dispatcher "I was walking to my door and I heard gunshots." (Tr. Vol. II at 185.) On the date of the incident, law enforcement personnel showed Irvin some photographs, and she indicated the individuals in the photographs were involved in the shooting. She acknowledged signing photographs, dated July 22, 2017, identifying appellant and Mi A. Steward. Irvin provided the officers with an address for appellant on Whittier Avenue. When asked who she identified as the shooter to the police, Irvin testified: "I said it was Sommer Steward." (Tr. Vol. II at 193.)

{¶ 22} On cross-examination, when asked if she actually saw appellant and the co-defendant, Irvin stated: "I mean, it looked like it could have been them, but no, I didn't actually see them. It was dark outside." (Tr. Vol. II at 194.) When asked whether anyone else might have had a beef with her, Irvin stated: "I mean, I just got a lot of people that just kind of dislike me. I don't know. That's pretty much it." (Tr. Vol. II at 196.)

{¶ 23} On redirect examination, Irvin acknowledged reading texts sent by appellant to Mann's phone stating: "I hope you all bitches know I'm coming for you all." Irvin testified "that's pretty much what she texted." (Tr. Vol. II at 203.) Irvin identified another text from appellant stating: "I'm going to show you bitches how savage * * * Stewards [*sic*] is." (Tr. Vol. II at 204.) Irvin further testified: "I assumed that she did it. Like I said, we had just gotten into a fight. My friend said it was her, so I just assumed it was her." (Tr. Vol. II at 204-05.)

{¶ 24} Hope Olson, a DNA analyst, conducted DNA testing on the t-shirt, obtained

from appellant's residence, in which the weapon was found wrapped. Olson determined there were three contributors of DNA to the t-shirt; the major contributor was a male, and Olson's report indicated that Mi A. Steward and appellant could be excluded as the major contributor.

{¶ 25} Columbus Police Detective Ronald A. Lemon assisted Detective Richardson in the investigation of the shooting incident. At trial, Detective Lemon identified photographs taken at Alcoy Drive depicting bullet strikes to the residence. One of the bullet holes went through a wall and hit a kitchen stove. He identified photographs of two projectiles found inside the residence; one of the projectiles was in a stove drawer, while the other was found on the hardwood floor.

{¶ 26} The investigation resulted in the names of two suspects, "Mi Angel Sky Blue Steward" and "Sommer Steward." Detective Lemon stated that no other suspects were developed and that "the victims actually knew them personally." (Tr. Vol. II at 238.) Warrants were obtained for the two suspects, and police officers found the suspect vehicle in front of appellant's residence located on East Whittier Street on the morning of the incident (at 4:18 a.m.). A search warrant was obtained for the residence. During the search, Detective Lemon recovered a revolver from a bedroom closet; the weapon had been wrapped in a t-shirt.

{¶ 27} At the close of the state's case, counsel for both appellant and co-defendant each made a Crim.R. 29 motion for judgment of acquittal. The trial court denied both motions. Following deliberations, the jury returned verdicts finding appellant guilty of all three counts. By judgment entry filed December 14, 2018, the trial court sentenced appellant to a concurrent term of two years of incarceration as to each count, consecutive to the three-year firearm specifications on Counts one and two, for a total aggregate sentence of eight years.

*Steward*, 2020-Ohio-4553.

Petitioner, represented by counsel, filed a direct appeal with the Tenth District Court of

Appeals, raising the following Assignments of Error:

[I.] Appellant's convictions were not supported by sufficient evidence.

[II.] The trial court plainly erred when it failed to instruct the jury that the State's impeachment could not be considered substantive evidence. This violated Appellant's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, as well as Crim.R. 52(B), Evid.R. 103(D), and Evid.R. 105.

[III.] Appellant's attorney rendered ineffective assistance of counsel which violated her right to counsel and right to a fair trial under the Sixth and Fourteenth

6

Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

[IV.] The lower court erred when it denied Appellant's motion to exclude evidence of the firearm recovered during the execution of the search warrant [on] East Whittier Street, Columbus, OH. This violated Appellant's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, as well as Evid.R. 103(A)(2), Evid.R. 401, Evid.R. 402, Evid.R. 403(A), Evid.R. 404(A), and Evid.R. 404(B).

[V.] Appellant's convictions were against the manifest weight of the evidence.

*Steward*, 2020-Ohio-4553, at ¶ 28. The Tenth District rejected all five assignments and affirmed

Petitioner's convictions and sentence. *Id*. at ¶ 83. Petitioner, again represented by counsel,

appealed to the Supreme Court of Ohio, raising a single Proposition of Law:

1. An Ohioan's conviction is legally insufficient when it is based primarily upon prior unsworn, out-of-court statements used by the prosecution to impeach the in-court testimony of its own witness when that witness testifies under oath at trial that the out-of-court statements were untruthful and unreliable.

A. Unsworn out-of-court identifying statements which contradict the witness's under oath testimony indicating they were untruthful and unreliable when such statements were made do not qualify as substantive evidence under Evid. R. 801(D)(l)(c).

B. The witness's sworn in-court testimony indicating she lacked the ability to accurately perceive and interpret events disqualifies her out-of-court unsworn statements as substantive evidence under Evid. R. 803(1) or 803(2) .

(State Court Record, ECF No. 9, PageID 276.) The Supreme Court of Ohio declined to accept

jurisdiction. *State v. Warman*, 160 Ohio St. 3d 1510, 2020-Ohio-6835.

On April 13, 2020, Petitioner filed the instant Petition, raising five claims:

1. Convictions were not supported by sufficient evidence.

Were appellant [*sic*] conviction supported by evidentiary sufficiency when the jury was permitted to consider information used by the prosecution to impeach its witnesses Ms. Mann and Ms. Irvin as substantive evidence of guilt.

2. Violation of rights to a fair trial under the Sixth and Fourteenth Amendments of the United States [Constitution].

7

The trial court plainly erred when it failed to instruct the jury that the state impeachment could not be considered substantive evidence.  The lower court err[ed] when it did not instruct the jury that that the information used by the State to impeach Ms. Mann and Ms. Irvin could not be construed as substantive evidence of "my guilt."

3. Ineffective Assistance of Counsel.

Trial attorney provided ineffective assistance of counsel by not filing certain pretrial motions objecting to the inadmissible evidence and requesting the court to provide the jury with certain limiting instructions.  Trial attorney never allow[ed] witness[es] or provide[d] the court with a video of my whereabouts at the time Irvin and Mann accused us of this shooting.

4. Denial of motions to exclude evidence of the firearm recovered during a search warrant.

Trial [court] committed reversible error when it refused to grant my motion to exclude evidence related to a firearm found in my home that wasn't related to the case or that I had no knowledge of being in a gues[t]room closet also that was confirmed not the firearm or had my DNA on it.

5. Convictions were against the manifest weight of the evidence.

The inclination [*sic*] of the greater amount of credible evidence, offered in trial to support one side of the issue rather than the other.  Prosecution presented a case where it impeach[ed] its two key witnesses Ms. Mann [and] Ms. Irvin with prior inconsistent statement[s].  The[y] both attested under oath to not seeing me during the occurrence.  Neither identified me as a shooter or being there in front of the jury.  Did someone else do it or did they fire shots at their own home?

(Petition, ECF No. 1, PageID 5, 7, 8, 10, 13).  On March 9, 2022, the Court dismissed Claim

Five as non-cognizable in habeas (Order, ECF No. 4).


## II.    Legal Standards

### A.    28 U.S.C. § 2254

As Petitioner is imprisoned based on a state court judgment, he may petition for a writ of

habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2254(a).  A petition "shall not be granted with respect to any claim" that:

> [W]as adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented[.]

28 U.S.C. § 2254(d).  A habeas corpus petitioner must also satisfy additional procedural requirements, including but not limited to exhaustion of State court judicial remedies.  28 U.S.C. § 2254(b).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, the Court's review of a claim adjudicated on its merits in a State court proceeding is sharply circumscribed; "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

A state court may be found to have acted "contrary to" federal law in two ways:  (1) if the state court's decision is "substantially different from the relevant precedent" of the United States Supreme Court; or (2) if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [United States Supreme Court] precedent."  *Williams (Terry) v. Taylor*, 529 U.S. 362,  405, 406 (2000).  A state court does not act contrary to federal law simply because its application of federal law was incorrect.  Rather, the decision must have been "mutually opposed[,]" *id*. at 406, to "clearly established Federal law, as determined by the

Supreme Court," 28 U.S.C. § 2254(d)(1), which encompasses only the holdings of Supreme

Court decisions, and not their dicta. *Williams (Terry)*, 529 U.S. at 412.

The "unreasonable application" standard is distinct from and more deferential than that of

"clear error." "It is not enough that a federal habeas court, in its independent review of the legal

question, is left with a firm conviction that the state court decision was erroneous. . . . Rather,

that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75, 76

(2003) (internal quotation marks omitted). "[E]valuating whether a rule application was

unreasonable requires considering the rule's specificity. The more general the rule, the more

leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v.*

*Alvarado*, 541 U.S. 652, 664 (2004). However, this deferential standard applies only when the

state court has addressed the merits of a claim raised on appeal; "[w]here a state court has not

adjudicated a claim on the merits, the issue is reviewed *de novo* by a federal court on collateral

review." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015).

### B.       Exhaustion, Procedural Default, and *Res Judicata*

A federal habeas corpus petitioner must exhaust his claims in the state court before he

may bring those claims before this Court. 28 U.S.C. § 2254(b)(2). This can be shown by

demonstrating that: (1) the highest court of a state has adjudicated the merits of the claim; or (2)

under state law, the claims are procedurally barred. *Gray v. Netherland*, 518 U.S. 152, 161-62

(1996). "[T]he doctrine of exhaustion requires that a claim be presented to the state courts under

the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313,

322 (6th Cir. 1998). However, if a claim is procedurally barred under state law because "a state

prisoner has defaulted his federal claims in state court pursuant to an independent and adequate

state procedural rule, [then] federal habeas review of the claims is barred." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Under Ohio law, failure to make timely objections at trial or to raise the issue on direct appeal from the trial court, if possible, bars a petitioner from raising that claim in a federal habeas corpus petition. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000), citing *State v. Perry*, 10 Ohio St. 2d 175 (1967), paragraphs eight and nine of the syllabus; *Leroy v. Marshall*, 757 F.2d 94, 97-99 (6th Cir. 1985); *see also*, *e.g.*, *Coleman v. Mitchell*, 244 F.3d 533, 538-39 (6th Cir. 2001) (holding that the "*Perry* rule" regarding *res judicata* was an adequate and independent state law ground upon which to find a claim procedurally defaulted, and thus, bar consideration of claims in district courts); *Wong*, 142 F.3d at 322 ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of *res judicata*.") A claim of ineffective assistance of counsel—*i.e.*, an argument that failure to make timely objections at trial should be excused— normally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 489 (1986).

Further, in raising the claims in the state court, a petitioner must set out why she believes her federal constitutional rights have been violated to avoid procedural default. 28 U.S.C. § 2254; *Gray*, 518 U.S. at 162-63. The procedural default analysis focuses on the "last explained state court judgment." A decision by a state supreme court in which the court declines to exercise jurisdiction over an appeal from an intermediate appellate court, but does not provide reasons for its refusal, does not constitute the "state judgment" upon which this Court resolves the procedural default question. *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). However, the threshold for what constitutes an

11

"explained state court judgment" is modest—the United States Court of Appeals for the Sixth Circuit has held that an order from a state supreme court stating nothing more than "that the petitioner had failed to meet the burden of establishing entitlement to relief under [Michigan Rule of Criminal Procedure] 6.508(D) – though brief – constituted the last explained state court decision in the case." *Id.* (internal quotation marks omitted), quoting *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000). A decision by a state court to review the merits of an otherwise-defaulted claim, as an act of grace to an appellant, does not save that claim from being procedurally defaulted in the federal district court. *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001); *Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995).

Nonetheless, there are certain requirements that the government must prove by a preponderance of the evidence before the procedural-default rule bars claims in this Court. *First*, a petitioner must have actually violated the state procedural rule; a state court's mistaken interpretation of a rule, or mistaken finding that the petitioner violated that rule, will not suffice. *Lee v. Kemna*, 534 U.S. 362, 376-77, 387 (2002); *Trevino v. Texas*, 503 U.S. 562, 567 (1992). *Second*, the case must not fall within an exception to the state procedural rule which the petitioner is alleged to have violated; *e.g.*, if the gravamen of a petitioner's ineffective assistance of counsel claim is based on evidence outside the trial court record, then failure to raise that claim on direct appeal does not constitute a procedural default. *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007). *Third*, the state court, in its last explained decision, must expressly state that a claim has been procedurally defaulted by failing to comply with a procedural rule; otherwise, "[w]hen a federal claim has been presented to a state court[,] and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

12

absence of any indication [of such a holding] or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). *Finally*, the state procedural rule must be "adequate"—that is, it must have been a "firmly established and regularly followed state practice[.]" *James v. Kentucky*, 466 U.S. 341, 348-49 (1984).

A petitioner may circumvent the procedural default bar by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991). The Sixth Circuit adopted a four-part test in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), in which the Court must examine whether: (1) a petitioner failed to comply with a procedural rule; (2) the state court enforced the procedural sanction; (3) the state procedural bar is "an adequate and independent ground" upon which the state can foreclose federal review; and (4) a petitioner can demonstrate good cause for not complying with the procedural rule, and actual prejudice from enforcement of the default. *Id*. at 138. To show cause, a petitioner must show that an objective factor, external to petitioner, prevented him from complying with the procedural rule, *Murray*, 477 U.S. at 488; and that his trial was "infected with error so 'plain' that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States v. Frady*, 456 U.S. 152, 163 (1982), citing Fed. R. Crim. P. 52(b).

Procedural default may also be excused if a petitioner can show, by a preponderance of the evidence, that she is "actually innocent," such that "a court cannot have confidence in the outcome of the trial[,]" *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001), quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995), and thus, her conviction constituted a "fundamental miscarriage of

13

justice." *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 515.  Finally, as a procedural default is

not an adjudication on the merits, if a petitioner can successfully set aside such a default, then

this Court must review the claim *de novo*.  *Harrington*, 562 U.S. at 99.


### III.    Analysis

####    A.    Claim One

To comport with Due Process, a state may not "convict a person of a crime without

proving the elements of that crime beyond a reasonable doubt."  *Fiore v. White,* 531 U.S. 225,

228-29 (2001).  In Claim One, Petitioner argues that the jury impermissibly considered the

testimony of Irvin and Mann as substantive, rather than impeachment, evidence, and that absent

the improperly-considered evidence, there was not sufficient evidence to convict Petitioner

(Petition, ECF No. 1, PageID 5).  While conceding that a sufficiency of the evidence claim is

properly before the Court, the Warden asserts that:

> Steward's sufficiency-of-the-evidence claim rests upon her erroneous belief that
> there was insufficient evidence to establish her identity as the shooter.  The crux of
> her argument is that out-of-court identifications of the state's primary witnesses
> (Mann and Irvin), were improperly admitted through the 911 recording and
> statements made to law enforcement officers at the scene because they should only
> have been admitted for impeachment purposes and not as substantive evidence.
> This specific evidentiary claim is raised as Steward's defaulted and noncognizable
> Second habeas ground.

(Return of Writ, ECF No. 11, PageID 938-39).

Moreover, the state court rejected the sufficiency claim on the merits.  *Steward*, 2020-

Ohio-4553, ¶¶ 29-56.  The Warden asserts, correctly, that the state court decision is entitled to

the above-described deference under AEDPA and to double deference under *Jackson v. Virginia*,

443 U.S. 307 (1979)—"first, deference to the jury's verdict, and second, deference to the state

14

court's consideration of the verdict." (Return of Writ, ECF No. 11, PageID 938, 941, citing 28 U.S.C. §2254(d)(1); *Davis v. Lafler*, 658 F.3d 525, 531-35 (6th Cir. 2011) (*en banc*)). The AEDPA standard "is difficult to meet, [but] that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), quoting *Harrington*, 562 U.S. at 102 (explaining that AEDPA deference and *Jackson* double deference are difficult standards to overcome by design).

The Tenth District considered and rejected the claim as follows:

{¶ 29} Under the first assignment of error, appellant challenges the trial court's denial of her motion for judgment of acquittal, pursuant to Crim.R. 29, asserting there was insufficient evidence to establish her identity as the shooter. Appellant's central argument is that out-of-court identifications of the state's primary witnesses (Mann and Irvin), admitted into evidence through the 911 recording and statements made to law enforcement officers at the scene, could be considered only for impeachment purposes and not as substantive evidence.

{¶ 30} Crim.R. 29(A) states in part: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Under Ohio law, "[a] motion for acquittal under Crim.R. 29 'challenges the legal sufficiency of the evidence,'" and "such motion 'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *State v. Martin*, 10th Dist. No. 14AP-189, 2014-Ohio-4447, 2014 WL 4977672, ¶ 19, quoting *State v. Carter*, 2d Dist. No. 21145, 2006-Ohio-2823, 2006 WL 1529706, ¶ 40; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. Under this standard "[i]n reviewing the 'record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'" *Martin* at ¶ 19, quoting *Tenace* at ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 31} In arguing that the out-of-court statements of Mann and Irvin could not be considered as substantive evidence, appellant relies on the "general rule," as recognized by Ohio law, that "'prior inconsistent statements constitute hearsay evidence and thus are admissible only for the purpose of impeachment.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 128, quoting 1 Gianelli, *Evidence*, Section 607.4 at 482-83 (3d Ed.2010). Related to appellant's

15

argument is the distinction drawn by courts "between using a prior inconsistent statement to impeach its maker under Evid.R. 613(B), and using it as substantive evidence, i.e., to prove the truth of the matter asserted." *State v. Laboy*, 8th Dist. No. 87616, 2006-Ohio-5927, 2006 WL 3234015, ¶ 19.

{¶ 32} In this respect, in instances where a prior inconsistent statement "is offered for the purpose of impeachment, the jury may only consider the prior statement as substantive evidence where the prior statement is admissible hearsay." *State v. Colvin*, 12th Dist. No. CA94-04-092, 1995 WL 103235 (Mar. 13, 1995), citing Weissenberger's *Ohio Evidence* Manual (1995), 227, Chapter 613. Thus, "unless another hearsay exception applies, a party may not interrogate his own witness about a prior inconsistent statement '"for the purpose of offering substantive evidence against the accused."'" *McKelton* at ¶ 128, quoting *State v. Dick*, 27 Ohio St.2d 162, 165, 271 N.E.2d 797 (1971), quoting *State v. Duffy*, 134 Ohio St. 16, 15 N.E.2d 535 (1938), paragraph two of the syllabus.

{¶ 33} The "[s]ubstantive use of a prior inconsistent statement is covered by Evid.R. 801(D)(1)." *State v. Hall*, 4th Dist. No. 13CA3391, 2014-Ohio-2959, 2014 WL 2984992, ¶ 42. Pursuant to that rule, "there are limited circumstances in which a prior inconsistent statement is not hearsay and may be used as substantive evidence, i.e. to prove the truth of the matter asserted in the statement." *Id.*, citing *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 183. *See also State v. Huff*, 1st Dist. No. C-930861, 1995 WL 35716 (Jan. 31, 1995) (prior inconsistent hearsay statement cannot be considered for substantive value "unless it either meets the requirements of Evid.R. 801(D)(1) * * * or satisfies some other exception to the rule against hearsay").

{¶ 34} Anticipating the state's argument on appeal (i.e., that the evidence at issue was either not hearsay or fell under exceptions to the hearsay rule), appellant asserts the out-of-court statements of Mann and Irvin, identifying appellant as the shooter, did not qualify as non-hearsay under Evid.R. 801(D)(1)(c). Appellant further maintains the statements did not qualify as hearsay exceptions under either Evid.R. 803(2) (excited utterances) or Evid.R. 803(5) (recorded recollections).

{¶ 35} We first address appellant's contention that the out-of-court statements of Mann and Irvin did not qualify as non-hearsay under Evid.R. 801(D)(1)(c). At the outset, we note the 911 recording was admitted at trial as state's exhibit No. 1 without objection. Similarly, the photographs signed by the victims identifying appellant and Mi A. Steward were admitted, without objection, as state's exhibit Nos. 14, 15, 16, and 17. Further, as observed by the state, appellant does not raise an assignment of error separately challenging the trial court's evidentiary rulings as to the admissibility of the subject evidence, including the admission of the 911 recording or the victims' identifications made to police officers at the scene.

{¶ 36} Evid.R. 801(D)(1) states in part: "A statement is not hearsay if * * * [t]he

16

declarant testifies at trial * * * and is subject to examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification." Accordingly, "[u]nder Evid.R. 801(D)(1)(c), a statement is not hearsay if (1) the declarant testifies at trial or a hearing and is subject to cross-examination on that statement, (2) it identifies a person soon after perceiving him, and (3) the circumstances demonstrate the reliability of that identification." *State v. Ramos-Aquino*, 10th Dist. No. 09AP-975, 2010-Ohio-2732, 2010 WL 2395776, ¶ 11.

{¶ 37} The state maintains the above requirements of Evid.R. 801(D)(1)(c) were met in this case. We agree and conclude that the prior out-of-court statements were admissible as substantive evidence under that rule.

{¶ 38} Here, both Mann and Irvin testified at trial and were subject to cross-examination as to their statements made on the 911 recording and to law enforcement officers at the scene in which they identified appellant and the co-defendant. Further, the statements at issue were "of identification of a person soon after perceiving" her (i.e., the 911 call was placed within 2-5 minutes of the shooting and the victims spoke to police officers at the scene shortly after the 911 call). *State v. Anderson*, 154 Ohio App.3d 789, 2003-Ohio-5439, 798 N.E.2d 1155, ¶ 75 (7th Dist.). *See also State v. Wagner*, 5th Dist. No. 03 CA 82, 2004-Ohio-3941, 2004 WL 1672200, ¶ 64 (trial court properly admitted statements as not hearsay under Evid.R. 801(D)(1)(c) where both victims testified at trial, both were subject to cross-examination regarding statements identifying appellant as the perpetrator, and the statements "were one of identification of appellant"). We also agree with the state that the circumstances demonstrated the reliability of the prior identification, as the victims were acquainted with both appellant and the co-defendant. *See, e.g.*, *State v. Young,* 5th Dist. No. 14CA25, 2015-Ohio-2075, 2015 WL 3474274, ¶ 41 (finding out-of-court identification of informant reliable under Evid.R. 801(D)(1)(c) because informant "was familiar with appellant" and positively identified the appellant in a photo array within hours of crime).

{¶ 39} We note that the failure of a declarant to make an in-court identification under Evid.R. 801(D)(1)(c) "is irrelevant to the issue of admissibility of [the] prior identification." *Ramos-Aquino* at ¶ 11, citing *State v. Vanatter*, 10th Dist. No. 86AP-1043, 1987 WL 12707 (June 11, 1987). *See also United States v. O'Malley*, 796 F.2d 891, 899 (7th Cir. 1986) (interpreting the federal counterpart rule (i.e., Fed.Evid.R. 801(D)(1)(c)), and holding that nothing "prohibits the introduction of out-of-court statements identifying the defendant made by the declarant who at trial admitted that he made the prior identification but now denies that the defendant was the same involved in the crime"). Ohio courts have observed that the rationale for Evid.R. 801(D)(1)(c) is "'that the perception made nearer the event is at least as likely, if not more likely, to be accurate than a subsequent identification in the court room.'" *State v. Houston*, 8th Dist. No. 64574 (Jan. 13, 1994), quoting Staff Note

to Evid.R. 801(D). Further, where the record establishes that the prior identification satisfies the factors for admissibility under Evid.R. 801(D)(1)(c), that rule permits the introduction of such evidence "for the truth of the matter asserted." *Ramos-Aquino* at ¶ 11.

{¶ 40} Appellant contends the statements should not have been admitted as non-hearsay because of the fact Mann and Irvin already knew appellant and the co-defendant. In support, appellant relies primarily on two cases from other jurisdictions, *Oregon v. Hartley*, 289 Ore.App. 25, 407 P.3d 902 (2017), and *State v. Robinson*, 718 N.W.2d 400 (Minn. 2006). We do not, however, find either case applicable to Ohio law interpreting Evid.R. 801(D)(1)(c). In *Hartley,* the Oregon Court of Appeals relied on a Legislative Commentary to the Oregon Evidence Code to hold that "OEC 801(4)(a)(C) is not to be read literally" and that "to qualify as nonhearsay, the identification *must result from*, and not merely follow, the declarant's perception of the person." (Emphasis sic.) *Id.* at 31, 407 P.3d 902. In *Robinson*, the Supreme Court of Minnesota held that Minnesota's version of "Rule 801(d)(1)(C) does not extend to the out-of-court accusation against an offender whose identity was well-known to the victim." *Id.* at 408.

{¶ 41} Appellant cites no Ohio courts that have relied on the above authorities in interpreting Ohio's version of Evid.R. 801(D)(1)(c). We note that Ohio courts, by contrast, have deemed evidence that a declarant was identifying an individual with whom they were acquainted as demonstrating indicia of reliability. *See State v. Lumpkin*, 2d Dist. No. 90 CA 82, 1991 WL 216919 (Oct. 25, 1991) (where declarant testified at trial, was subject to cross-examination, identification statement was made no later than an hour after incident, and declarant was "identifying a person with whom she was acquainted," such circumstances "tend to establish that [declarant's] identification was reliable"); *State v. Ingram*, 10th Dist. No. 06AP-984, 2007-Ohio-7136, 2007 WL 4564246, ¶ 71 (finding "significant," in considering reliability of prior identification under Evid.R.801(D)(1)(c), that declarant was "familiar with appellant after having previously seen him" at store); *State v. Mitchell*, 2d Dist. No. 24797, 2012-Ohio-3722, 2012 WL 3542309, ¶ 35 (testimony by witnesses identifying individual they knew as "Slim" as the shooter met requirements for admissibility under Evid.R. 801(D)(1)(c) as "[t]hey were subject to cross examination, their identifications were made soon after the event, and the circumstances demonstrated reliability insofar as they knew [defendant] beforehand").

{¶ 42} Appellant also challenges the identification procedure itself with respect to the single suspect photos of appellant and the co-defendant. Appellant contends the identification procedure used by police officers, based on a single photograph, was unduly suggestive.

{¶ 43} Ohio courts have rejected similar challenges in cases where, as here, the danger of misidentification was lessened by the fact the victim(s) already knew the

18

alleged perpetrator. *See State v. Nitsche*, 8th Dist. No. 103174, 2017-Ohio-529, 2017 WL 663194, ¶ 29 (any challenge of pre-trial identification as being tainted by single photograph would have been futile as victim knew defendant and identified him by nickname prior to seeing photograph); *State v. Barnett*, 67 Ohio App.3d 760, 769, 588 N.E.2d 887 (4th Dist.1990) (trial court could properly determine that pre-trial identification in which witness was shown single photograph was "not even remotely likely to create a likelihood of misidentification" where witness testified the appellant was a regular customer in store, she knew his first name prior to identification, and she had seen him twice on the date of the robbery); *State v. Henderson*, 6th Dist. No. L-10-1122, 2012-Ohio-1396, 2012 WL 1075166, ¶ 29 (use of single photograph of defendant not unduly suggestive; strongest fact was victim's familiarity with defendant before he offended and "picture was 'to confirm the identity of the suspect'") (emphasis omitted.) In the instant case, although no challenge was raised at trial as to the identification procedure with respect to the photographs (nor as to their admission into evidence as state's exhibit Nos. 14-17), we find the trial court could have reasonably determined, under the facts and circumstances presented, that the procedures employed did not create a substantial likelihood of misidentification.

{¶ 44} Here, based on the plain language of the rule, the requirements of Evid.R. 801(D)(1)(c) were met, and the victims' statements were therefore admissible as substantive evidence. Accordingly, had an objection been made, the trial court "would have acted within its discretion in determining that all prerequisites to admissibility under Evid.R. 801(D)(1)(c) had been met." *State v. Anderson*, 2d Dist. No. 13003, 1994 WL 95228 (Mar. 23, 1994).

{¶ 45} Even assuming, however, we were to find the statements at issue to be hearsay, we would agree with the state's further contention that the statements were admissible as exceptions to hearsay under Evid.R. 803(2) (excited utterances) and/or Evid.R. 803(1) (present sense impressions). In accordance with Evid.R. 803, "present sense impressions and excited utterances are not excluded by the hearsay rule, even though the declarant is available as a witness." *State v. Given*, 7th Dist. No. 15 MA 0108, 2016-Ohio-4746, 2016 WL 3573561, ¶ 25.

{¶ 46} Evid.R. 803(1) allows the admission of statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Pursuant to Evid.R. 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the rule against hearsay. With respect to present sense impressions, "the declarant need not be under 'stress of excitement caused by the event or condition,' as required for an excited utterance; rather, the primary focus is whether the statement was contemporaneous with the perceived event or condition." *State v. Crowley,* 2d Dist. No. 2009 CA 65, 2009-Ohio-6689, 2009 WL 4893283, 14.

{¶ 47} Courts have noted that the hearsay exceptions for present sense impressions and excited utterances reflect "'an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event'" and that "'the key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter.'" *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237, ¶ 35 (2d Dist.), quoting *State v. Ellington*, 8th Dist. No. 84014, 2004-Ohio-5036, 2004 WL 2340287, ¶ 10. Thus, "'[b]y making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived -- a fact which obviously detracts from the statement's trustworthiness.'" *Id.*

{¶ 48} Under Ohio law, "911 calls are generally admissible as excited utterances or present sense impressions." *State v. Gray*, 10th Dist. No. 06AP-15, 2007-Ohio-1504, 2007 WL 949440, ¶ 11, citing *State v. Banks*, 10th Dist. No. 03AP-1286, 2004-Ohio-6522, 2004 WL 2809070; *State v. Holloway*, 10th Dist. No. 02AP-984, 2003-Ohio-3298, 2003 WL 21455103. *See also State v. Rose*, 8th Dist. No. 89457, 2008-Ohio-1263, 2008 WL 740563, ¶ 42 ("Precedent overwhelmingly supports the conclusion that 911 calls are admissible either as excited utterances or present sense impressions."); *State v. Jackson*, 2d Dist. No. 2004-CA-24, 2005-Ohio-6143, 2005 WL 3081110, ¶ 15, quoting *State v. Tibbetts*, 92 Ohio St.3d 146, 158-59, 749 N.E.2d 226 (2001) (911 call "properly admissible as a present-sense impression, because [caller's] statement was 'describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter'"); *State v. Williams*, 6th Dist. No. L-08-1371, 2009-Ohio-6967, 2009 WL 5174155, ¶ 64 (911 call, made "just minutes after" incident, properly admitted as an excited utterance).

{¶ 49} In the present case, the 911 call included the following exchange:

911 DISPATCHER: Okay. And what's going on there?

MS. IRVIN: Oh, my God. This girl – me and my friend just pulled up to my house, and we noticed there was a car already sitting outside. And a girl – we know the girl. She got out and shot at my house. Like shot at me and my house. There's bullet holes in my house. And drove off in a truck.

911 DISPATCHER: How long ago was this?

MS. IRVIN: I don't know. It was like five minutes ago. Not even five minutes. Probably two minutes ago.

911 DISPATCHER: Okay. And was anybody hit?

MS. IRVIN: Oh, my gosh. No, there wasn't nobody hit. My house is like the third

one.

911 DISPATCHER: What's her name?

MS. IRVIN: Her name is Sommer Steward. It was two of them. So her and her cousin.

MS. MANN: (Inaudible.)

911 DISPATCHER: (Inaudible.)

MS. IRVIN: Yeah, her niece. Her niece's name is Mi Angel Steward. Her niece was driving, and she's already wanted for felonious assault. And the girl Sommer Steward is the one who was shooting.

(Tr. Vol. II at 42-43.)

{¶ 50} Here, the record reflects the 911 call was placed within two to five minutes after the shots were fired. According to Irvin, the shots were fired "at me and my house," therefore implicating a startling event. (Tr. Vol. II at 47.) Further, the declarant identified appellant as the shooter in reaction to the event. Based on review of the 911 transcript, the trial court could have reasonably concluded the statements were made by the declarant immediately after perceiving the event and/or while the declarant was under the stress of excitement caused by the event, and therefore the 911 call was admissible as an excited utterance and/or present sense impression exception to the hearsay rule.

{¶ 51} Accordingly, because the statements at issue were admissible as non-hearsay under Evid.R. 801(D)(1)(c) and, in any event, qualified under exceptions to the rule against hearsay, they were properly admissible as substantive evidence. Having addressed appellant's arguments as to the admissibility of the out-of-court court statements as substantive evidence, we turn to her sufficiency of the evidence challenge in the context of the trial court's ruling denying her motion for judgment of acquittal.

{¶ 52} As noted, the jury returned verdicts finding appellant guilty of felonious assault and improperly discharging a firearm. R.C. 2903.11 defines the offense of felonious assault, and R.C. 2903.11(A)(2) states in part: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance [sic]." R.C. 2923.161 sets forth the offense of improperly discharging a firearm at or into a habitation. R.C. 2923.161(A)(1) states in part: "No person, without privilege to do so, shall knowingly * * * [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual."

{¶ 53} In the present case, the state argues sufficient evidence was presented to

establish appellant's guilt based on the victims' statements to the 911 operator, their positive identifications of appellant at the scene, the corroborating photographs and physical evidence showing bullet strikes to Irvin's residence, and the discovery of the vehicle matching the description and license number provided by the victims shortly after the offense. We agree.

{¶ 54} We note that this court, in considering a sufficiency challenge raised by co-defendant Mi A. Steward, concluded that "the 911 recording, combined with Mann's and Irvin's admissions at trial that they made the incriminating statement heard on the recording, provides sufficient evidence to prove, beyond a reasonable doubt, [Mi A. Steward] was the driver of the vehicle used by Sommer to arrive at the crime scene before the commission of the offense and to flee the scene after the shooting." *State v. Steward*, 2019-Ohio-5258, 2019 WL 6974456, at ¶ 25.

{¶ 55} We similarly find, in viewing the evidence presented in a light most favorable to the prosecution, that the 911 recording, as well as the admissions of the witnesses and the other corroborating evidence, provided sufficient evidence on which the trier of fact could conclude that appellant fired the shots at the residence and/or at the victims. Accordingly, because the state presented sufficient evidence to prove each element of the offenses beyond a reasonable doubt, the trial court did not err in denying appellant's Crim.R. 29 motion for judgment of acquittal.

{¶ 56} Based on the foregoing, appellant's first assignment of error is not well-taken and is overruled.

*Steward*, 2020-Ohio-4553 (brackets in original).

The Ohio court's above interpretation on a matter of Ohio law—specifically, that the 911 statements either were not hearsay or fall under a hearsay exception—binds this Court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, Petitioner's claim is colorable only if the admission of the statements violated her right to due process or a fair trial, *and* absent those statements, there was insufficient evidence upon which a reasonable trier of fact could find Petitioner guilty beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Petitioner falls well short of meeting that exacting standard. Petitioner has not made any argument or cited any caselaw that would call into question the state court's well-reasoned conclusions that the 911 statements either were not hearsay or were admissible under a hearsay exception. *Steward*, 2020-Ohio-

22

4553, ¶ 51, citing Ohio R. Evid. 801(d)(1)(C), 803. Thus, the 911 statements were properly considered for the truths of the matters asserted. Moreover, after Mann's recollection was refreshed, she testified consistently with the 911 statements. *Id*. at ¶¶ 9-10. The 911 statements and the testimony of Mann (and Irwin) are more than sufficient evidence upon which a reasonable trier of fact could find Petitioner guilty beyond a reasonable doubt. *See, e.g.*, *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (quoting *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty.")). As there is no indication that the Tenth District's decision was even wrong, much less contrary to clearly established law or based on an unreasonable interpretation of facts, that decision may not be disturbed, and Claim One should be dismissed.

### B.     Claim Two

Petitioner asserts that the trial court erred in not instructing the jury that the 911 statements made by Irvin and Mann could not be considered as substantive evidence of Petitioner's guilt (Petition, ECF No. 1, PageID 7). At the outset, the Court notes that whether a jury instruction was improperly given is a matter of state law. Thus, habeas relief is not warranted unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). That burden is greater than showing plain error on direct appeal, and is greater still because a failure to give an instruction is less likely to be seen as erroneous than an incorrect or improperly given instruction. *Henderson v. Kibbe*, 431 U.S. 145, 154, 155 (1977). Moreover, as the Warden notes, under Ohio's contemporaneous objection rule, counsel's failure to object at trial meant that all but plain error was waived on direct appeal

23

(Return of Writ, ECF No. 11, PageID 932, citing State Court Record, ECF No. 9, PageID 123-24). Petitioner did raise the issue on direct appeal to the Tenth District, which found no plain error. *Steward*, 2005-Ohio-4553, at ¶¶ 57-59. Therefore, the Warden asserts, the appellate court's plain error review means that the claim was procedurally defaulted: "An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default." (Return of Writ, ECF No. 11, PageID 932-33, citing *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005)). Also, Petitioner did not raise the issue to the Supreme Court of Ohio. Thus, the Warden argues, the claim is unexhausted and not properly before this Court (Return of Writ, ECF No. 11, PageID 934, citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 847 (1999); *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003); State Court Record, ECF No. 9, PageID 123-24, 276).

Procedural default analysis follows the established four-part test described above. *First*, there is no dispute that Petitioner's counsel failed to object to the absence of a limiting instruction at the time that jury instructions were given. *Second*, there is no indication that Petitioner falls into an exception to the contemporaneous objection rule. *Third*, the Tenth District engaged only in plain error review on appeal. *Steward*, 2020-Ohio-4553, at ¶¶ 57-59. As discussed above, plain error review is enforcement, not excusal, of procedural default. *Wogenstahl*, 668 F.3d at 337. *Finally*, Ohio's contemporaneous objection rule is an adequate and independent state law ground upon which to find a claim defaulted. *Engle v. Isaac*, 456 U.S. 107, 124-25 (1982); *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

24

Out of fairness to Petitioner and an abundance of caution, the undersigned applies the above-described four-part *Maupin* test.  785 F.2d at 138.  There is no doubt that Petitioner's counsel failed to object contemporaneously (Part One), and that the state appellate court, through plain error review, enforced the procedural default (Part Two).  As discussed above, the contemporaneous objection rule is an adequate and independent state law ground upon which to find a claim defaulted (Part Three).  Finally, Petitioner did not file a traverse or otherwise argue cause and prejudice that would excuse the procedural default (Part Four).  Thus, Claim Two is procedurally defaulted and should be dismissed.

### C.     Claims Three and Four

Petitioner asserts that trial counsel was ineffective in failing to object to the lack of limiting instruction described above in Claim Two and in failing to produce an alibi video (Claim Three); and that the trial court erred in denying motions to suppress the firearm discovered during a search of her home (Claim Four) (Petition, ECF No. 1, PageID 8, 10).

As both claims arise from the state court record, Petitioner was obligated to present them on direct appeal.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (quoting *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir. 1990)).  Yet, as Respondent correctly notes, Petitioner did not present either of these claims to the Supreme Court of Ohio in her appeal of the Tenth District's affirmance of her convictions (Return of Writ, ECF No. 11, PageID 934, citing *Boerckel*, 526 U.S. 838 at 845, 847; *Caver*, 349 F.3d at 346; State Court Record, ECF No. 9, PageID 123-24, 276).  It is undisputed that the highest state court—the Supreme Court of Ohio—did not adjudicate the claims, and Petitioner does not provide any reason why she failed to raise the issues to the Supreme Court of Ohio.  Nor does she assert that

25

the claims were otherwise non-reviewable in the state court.  Thus, Claims Three and Four are not exhausted and are not properly before the Court.  28 U.S.C. § 2254(b)(2).  Consequently, they should be dismissed.

### D.    Claim Five

In Claim Five, Petitioner argues that his Fifth and Fourteenth Amendment rights were violated because his conviction was against the manifest weight of the evidence (Petition, ECF No. 1, PageID 13).  This claim was previously dismissed by this Court as non-cognizable (Order, ECF No. 4).

## IV.    Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Petition be **DENIED**, the case be **DISMISSED WITH PREJUDICE**, and that judgment should enter in favor of the Warden and against Petitioner.  Because Petitioner has not made a substantial showing of a denial of a constitutional right, 28 U.S.C. § 2254(c)(3), and no reasonable jurist would disagree would this conclusion, Petitioner should be denied a certificate of appealability and should not be permitted to proceed on appeal *in forma pauperis*.

## <u>PROCEDURE ON OBJECTIONS TO REPORT AND RECOMMENDATION</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo*

determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


**Date: September 29, 2022**            ***s/ Elizabeth A. Preston Deavers***
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**